1  **AKERMAN LLP**
   KAREN PALLADINO CICCONE (SBN 143432)
2  Email: karen.ciccone@akerman.com
   725 South Figueroa Street, 38th Floor
3  Los Angeles, California 90017-5438
   Telephone: (213) 688-9500
4  Facsimile:  (213) 627-6342

5  Attorneys for Defendants
   ATRIUM MEDICAL CORPORATION,
6  MAQUET CARDIOVASCULAR, LLC,
   MAQUET CARDIOVASCULAR US SALES LLC,
7  and MAQUET MEDICAL SYSTEMS USA

8
                      **UNITED STATES DISTRICT COURT**
9
                      **NORTHERN DISTRICT OF CALIFORNIA**
10

11
   | | |
   |---|---|
   | ROBYN BLASCO, CATHY CARSON, SUSAN HAHN, PAMELA MUSHTAQ, ROBERT SPRANKLE, JOSEPH BRAGG, JANICE KOWALESKI, and JUAN PAREDES,<br><br>Plaintiffs,<br><br>v.<br><br>ATRIUM MEDICAL CORPORATION, GETINGE GROUP, GETINGE USA, INC., MAQUET CARDIOVASCULAR, LLC, MAQUET CARDIOVASCULAR US SALES, LLC, MAQUET MEDICAL SYSTEMS USA, AND DOES 1-20,<br><br>Defendants. | Case No. 4:14-cv-3285<br><br>**NOTICE OF REMOVAL UNDER 28 U.S.C. §1441(B) (DIVERSITY) BY DEFENDANT ATRIUM MEDICAL CORPORATION**<br><br>**28 U.S.C. § 1332(a)(1)**<br><br>**Alameda County Superior Court Case No. RG14730177**<br><br>Complaint Filed: June 22, 2014<br><br>Filed Concurrently with Declaration and Certificate of Interested Parties |

{29228290;2}                                1                          CASE NO. 4:14-CV-3285
**NOTICE OF REMOVAL UNDER 28 U.S.C. 1441(B) (DIVERSITY)**

**TO THE COURT, ALL PARTIES AND TO THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that Defendant Atrium Medical Corporation ("Atrium") hereby removes this action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. The United States District Court for the Northern District of California has original subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among all properly joined and served parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Atrium's grounds for removal are as follows:

## I. BACKGROUND

1. On or about June 22, 2014, eight plaintiffs from seven different states ("Plaintiffs") filed a Complaint styled *Blasco, et al. v. Atrium Medical Corporation, et al.*, in the Superior Court for the State of California, County of Alameda, Case No. RG14730177 (the "State Court Action").[1] Only one of the Plaintiffs is from California.

2. The defendants are Atrium Medical Corporation, Getinge Group, Getinge USA, Inc., Maquet Cardiovascular, LLC, Maquet Cardiovascular US Sales, LLC, and Maquet Medical Systems USA (collectively "Defendants"). Only Atrium, Maquet Cardiovascular LLC, and Maquet Cardiovascular US Sales LLC, d/b/a Maquet Medical Systems USA, have been served; for purposes of diversity jurisdiction, they are citizens of Delaware, New Hampshire, and New Jersey. None of the Defendants are citizens of California.[2]

3. Plaintiffs assert claims against the Defendants for Strict Liability-Failure to Warn, Strict Liability-Manufacturing Defect, Negligence, Breach of Implied Warranty, Breach of Express Warranty, Fraud, and Negligent Misrepresentation. (Compl. ¶¶37-78).

4. Other than the fact that each Plaintiff alleges he or she was implanted with some polypropylene mesh product, the Plaintiffs' claims are unrelated to each other, in that they each

---

[1] Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served upon and by Defendants, including the Summons and Complaint, are attached as Exhibit A.

[2] Service has also been made on Maquet Medical Systems USA, but Maquet Medical Systems USA is a d/b/a for Maquet Cardiovascular US Sales LLC.

1  involve different products, different surgeons, different hospitals, different medical conditions,
2  different states, different state laws, and different damages.

3  5.  Nevertheless, counsel has joined these eight unrelated Plaintiffs into one state court
4  action in California.  Among the misjoined Plaintiffs are two New Jersey Plaintiffs and one New
5  Hampshire Plaintiff (together, the "Non-diverse Plaintiffs") with no explanation for why their claims –
6  by New Hampshire/New Jersey Plaintiffs, against New Hampshire/New Jersey Defendants – would be
7  appropriately filed all the way across the country in the Superior Court of California for Alameda
8  County.

9  6.  As demonstrated below, the Non-diverse Plaintiffs' claims are joined in this action for
10 one reason and for one reason only: to destroy diversity jurisdiction of this Court and deprive the
11 Defendants of their federal statutory right of removal granted by 28 U.S.C. §§ 1441 *et seq.* and 1453
12 and their rights under 28 U.S.C. § 1332(a), as non-resident defendants, to have claims filed against
13 them adjudicated in this federal court.

14 7.  Because such forum manipulation is clearly impermissible under Federal law, the Non-
15 diverse Plaintiffs' citizenship should be ignored for purposes of the diversity analysis.  Thus, this case
16 is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendants have satisfied the
17 procedural requirements for removal and this Court has subject matter jurisdiction over this action
18 pursuant to 28 U.S.C. § 1332 (a).

19 **II.  GROUNDS FOR REMOVAL**

20 **A.   This Court Has Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332(a)**

21 8.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a
22 civil action between citizens of different states in which the amount in controversy exceeds $75,000,
23 exclusive of interest and costs.

24 **1)   The Amount in Controversy Requirement is Satisfied**

25 9.  Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds that the
26 amount in controversy exceeds $75,000.00, exclusive of interest and costs.  A removing defendant
27 need only show that the amount in controversy "more likely than not" exceeds the jurisdictional
28 minimum of $75,000.00.  *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).

When the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal. *See Simmons v. PCR Tech.*, 209 F.Supp. 2d 1029, 1031 (N.D. Cal. 2002).

10. It is evident from the Complaint that as to each Plaintiff, the amount in controversy exceeds $75,000.00. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997). Plaintiffs allege that the polypropylene mesh about which they complain "can cause serious injury to patients, significantly impacting their quality of life," causing "inflammation, granuloma formation, and foreign body reactions" and the formation of scar tissue (Compl. ¶26). Plaintiffs also allege that as the mesh degrades in the human body, "small flakes of polypropylene can lead to infection and irritation, and resultant serious pain." (Compl. ¶27). Plaintiffs further allege that each of them has "suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses in the future." (*See, e.g.,* Compl. ¶¶ 44, 50). Plaintiffs seek general damages, special damages, loss of earnings and earning capacity, past and future medical expenses, mental and emotional distress damages, and other damages. (Compl. p. 15.)

11. In addition, Plaintiffs seek punitive damages. (Compl. ¶¶ 79-83). "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

12. It is plain, based upon these allegations, that the amount in controversy exceeds the $75,000 jurisdictional threshold. *See, e.g., In re Rezulin Prods. Liab. Litig.,* 133 F.Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *McPhail v. Deere Co.*, 529 F.3d 947, 955-56 (10th Cir. 2008) (citing *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999) (amount in controversy established by "alleged damages for property, travel expenses, and emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation and her temporary inability to do housework").

13. Thus, on the face of the Complaint, it is clear that the amount in controversy for each Plaintiff exceeds $75,000, exclusive of interest and costs. Therefore, the jurisdictional amount-in-controversy requirement is satisfied.

### 2) Complete Diversity of Citizenship Exists Between the Properly Joined Plaintiffs and Defendants

14.  Three Defendants have been served in this action: Atrium, Maquet Cardiovascular LLC, and Maquet Cardiovascular US Sales LLC, d/b/a Maquet Medical Systems USA.  For purposes of determining citizenship under 28 U.S.C. §1332(c)(1), Defendant Atrium is a citizen of Delaware and New Hampshire because it is a Delaware corporation with its principal place of business in Hudson, New Hampshire.  Maquet Cardiovascular LLC is a Delaware limited liability company with its principal place of business in New Jersey.  Its sole member, Datascope Corp., is incorporated in Delaware and has its principal place of business in New Jersey.[3]  Maquet Cardiovascular US Sales LLC, d/b/a Maquet Medical Systems USA, is a Delaware limited liability company with its principal place of business in New Jersey.  Maquet Cardiovascular LLC is the sole member of Maquet Cardiovascular US Sales LLC.

15.  The eight Plaintiffs are citizens of seven states:  California, Pennsylvania, Hawaii, Georgia, New Hampshire, Arkansas, and two Plaintiffs from New Jersey.[4]

16.  As explained below, the joinder of the New Hampshire and New Jersey Plaintiffs is nothing more than an attempt by counsel to evade diversity jurisdiction of this Court and deprive Defendants of their right of removal under Federal law.

### 3) Non-Diverse Plaintiffs Are Fraudulently Misjoined

#### a) Diversity Jurisdiction

17.  "The diversity-of-citizenship requirement has a special nature and purpose to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants." *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 837 (8th Cir. 2013) (internal citations and quotes omitted).  In other words, the "primary purpose of diversity jurisdiction is to avoid prejudice against 'outsiders.'" *Arellano v. Home Depot U.S.A., Inc.*, 245 F.Supp.2d 1102, 1104 (S.D. Cal. 2003) (internal quotations omitted).

---

[3] *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citations omitted) (holding that, for diversity purposes, LLCs are citizens of every state of which its owners/members are citizens).

[4] Plaintiff also identifies several "Doe Defendants" in the caption to the Complaint.  However, in determining whether a civil action is removable, the citizenship of defendants sued under fictitious names shall be disregarded.  28 U.S.C. § 1441(b)(1).

18. Congress first implemented the Federal constitutional grant of diversity jurisdiction by its passage of the Judiciary Act of 1789, 1 Stat. 78, 11. The federal courts have had jurisdiction over suits between citizens of different states ever since. The Act of March 3, 1875, § 1, 18 Stat. 470, first established the language found today in 28 U.S.C. § 1332(a).

19. State court plaintiffs have been attempting to deprive defendants of their federal right to remove actions ever since. In recognition of this fact, the United States Supreme Court has adopted judicial tools – namely, the prohibition against jurisdictional manipulation and the doctrine of fraudulent joinder[5] – to prevent those efforts. *See Alabama Great Southern Ry. v. Thompson*, 200 U.S. 206, 213-17 (1906) (distinguishing circumstances in which joinders which are shown to be attempts at defeating Federal jurisdiction, and stating that in such cases "Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals."); *Wecker v. Nat'l Enameling & Stamping Co.,* 204 U.S. 176, 186 (1907) ("Federal Courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.").

20. "So long as federal diversity jurisdiction exists … the need for its assertion may well be greatest when the plaintiff tries hardest to defeat it. The plaintiff who chooses to sue a noncitizen defendant in a state court may be motivated by the hope that the out-of-state defendant will be at a substantial disadvantage in that court, and the likelihood of such motivation increases with the lengths to which the plaintiff will go to prevent removal to a federal forum." American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts,* Commentary on Proposed § 1307 at 104 (Sept. 25, 1965 Official Draft).

21. The United States Supreme Court has determined that inclusion or designation of a party to a suit "may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). A defendant's right

---

[5] Fraudulent joinder is a term of art and does not describe plaintiff's subjective intent. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

{29228290;2}       6        CASE NO. 4:14-CV-3285

**NOTICE OF REMOVAL UNDER 28 U.S.C. 1441(B) (DIVERSITY)**

of removal cannot be defeated by the fraudulent joinder of a party "having no real connection with the controversy." *Chesapeake & Ohio Ry. Co., v. Cockrell*, 232 U.S. 146, 152 (1914).

22. As explained below, the inclusion of the three non-diverse Plaintiffs in this case is precisely the type of manipulative artifice that numerous precedents of the United States Supreme Court explicitly prohibit.

### b) The Doctrine of Fraudulent Misjoinder

23. Fraudulent misjoinder occurs when a claim involving nondiverse parties has no reasonable procedural basis, because the misjoined claim has "no real connection with the controversy involving the claims that would qualify for diversity jurisdiction." *Prempro*, 591 F.3d 613, 620 (8th Cir. 2010); *see also Keune v. Merck & Co.*, 2013 WL 3729570, at *4. "Fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction." *In re Benjamin Moore & Co.,* 318 F.3d 626, 630 (5th Cir. 2002) (citing *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir. 1996)).

24. Federal courts may exercise diversity jurisdiction over nondiverse parties if there has been fraudulent misjoinder. *Tapscott,* 77 F.3d at 1360, *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *Prempro*, 591 F.3d at 622.

25. The Ninth Circuit has referred to the misjoinder of parties as an artifice to defeat diversity jurisdiction in multiple decisions. *See Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. Appx. 727 (9th Cir. 2001); *see also Richey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir. 1998). In *Cummins*, the appellate court cited *Tapscott*, 77 F.3d at 1360 (11th Cir. 1996) and stated that it would "assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs." *Cummins*, 24 F. Appx at 727, *7.

26. Other federal appellate courts and trial courts have recognized the validity of and the vital need for the fraudulent misjoinder rule and following the Eleventh Circuit's lead have adopted this doctrine. *See, e.g., Keune v. Merck & Co.,* Doc. 63, No. 12-MDL-2331 (E.D.N.Y. May 17, 2013); *Welch v. Merck Sharpe & Dohme Corp.*, MDL No. 2243, No. 11-3045, 2012 Dist. LEXIS 48114 (D.N.J. Apr. 3, 2012); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002); *Greene v. Wyeth*, 344 F.Supp. 2d 674, 684-85 (D.Nev. 2004); *Grennell v. W.S. Life Ins. Co.*, 298 F.Supp. 2d 390,

396 (S.D. W. Va. 2004). As one court put it, "the premise which underlies the concept of fraudulent misjoinder is that diverse defendants ought not be deprives of their right to a federal forum by such a contrivance as this." *Reed v. Am. Med. Sec. Group, Inc.,* 324 F.Supp.2d 798, 805 (S.D. Miss. 2004).

### c) The Facts of This Case Present a Textbook Case of Fraudulent Misjoinder

27. The claims of the Plaintiffs against the Defendants in this case are severable and not joint; each Plaintiff alleges a separate claim against Defendants based upon an entirely different set of facts – different products, different physicians, different hospitals, different medical conditions. Each Plaintiff named in the Complaint purports to have his or her own individual "case or controversy" against Defendants, and each Plaintiff is the real party in interest for his or her individual claims. *See* Fed. R. Civ. P. 17.

28. The Complaint alleges no facts that show or even suggest that the claims of the New Jersey or New Hampshire Plaintiffs have any substantive nexus with the State of California or its state courts. The three token plaintiffs are the putative "poison pill" that the other Plaintiffs whose citizenship is diverse from Defendants are improperly using to try and deprive Defendants of their legal right to defend themselves in this Federal district court.

29. Even if their separate claims could be properly joined under the California or Federal Rules of Civil Procedure into a single proceeding, those procedural rules of joinder of parties "do not extend or limit" the subject matter jurisdiction of the Federal district courts. *See* Fed. R. Civ. P. 82. Thus, any such procedural rule must yield to 28 U.S.C. § 1332(a).

30. Under both Federal and California law, joinder of plaintiffs is permissible only when (1) they assert claims arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. See Fed. R. Civ. P. 20(a)(1); *see also* Cal. Code Civ. Proc. § 378(a).

31. Here, it is evident from the allegations of the Complaint that the Plaintiffs' claims did not arise out of the same transaction or occurrence; indeed, the only similarity the claims appear to have is the basic allegation that each were implanted with one or more of a number of different mesh products. (Compl. ¶¶ 5-12).

32. The Complaint alleges that the Plaintiffs were implanted with various types of polypropylene mesh – ProLoop, C-QUR, and ProLite. These products are prescription medical devices regulated by the United States Food and Drug Administration under the Food, Drug & Cosmetic Act, as amended, *see* 21 U.S.C. § 301 *et seq.,* and each product has its own unique packaging and labeling.

33. The claims of each of the Plaintiffs are therefore distinct in significant ways such that they cannot plausibly arise from the same transaction, occurrence, or series of transactions or occurrences:

- *Different Products*: Plaintiffs are joined together despite the fact that their Complaint alleges claims arising from the implantation of various mesh products. Each of the brands of Atrium's mesh devices are indicated for an intended use specific to the given brand. As a result, these devices are all distinct products that were developed and introduced over the course of several different years, involved separate and distinct regulatory clearances, and which have distinct labeling. *See Stinnette v. Medtronic, Inc.*, No. H-09-03854, 2010 WL 767558, *2 (S.D. Tex. Mar. 3, 2010) (claims improperly joined because "[i]f the plaintiffs were prescribed different models of Medtronic's devices … and these different models each malfunctioned in some way, then the inquiry necessarily focuses on different transactions or occurrences.").

- *Different alleged injuries*. The Complaint does not allege injuries specific to each Plaintiff. Rather, it alleges that the products in general cause "serious injury to patients, significantly impacting their quality of life," and can cause "inflammation, granuloma formation, and foreign body reactions" and the formation of scar tissue (Compl. ¶26). This is a broad array of injuries, none of which Plaintiffs attribute to any specific Plaintiff. *See Welch v. Merck Sharpe & Dohme Corp.*, MDL No. 2243, No. 11-3045, 2012 U.S. Dist. LEXIS 48114, at *3 (D.N.J. Apr. 2012) (finding fraudulent misjoinder where "[e]ach Plaintiff broadly alleges a 'long bone fracture'" but "no Plaintiff actually identifies which long bone was fractured, the type of fracture sustained, or how the fracture occurred"); *see also In re Rezulin Prods. Liab. Litig.,* 168 F.Supp. 2d 136, 146 (S.D.N.Y. 2001) (holding plaintiffs misjoined where "they do not allege injuries specific to each of them so as to allow the Court to determine how any plaintiffs, if any, share injuries in common"); *Simmons v. Wyeth*

*Labs., Inc.,* 1996 U.S. Dist. LEXIS 15950, Nos., 96 CV 6631, 6686, 6728, 6730, 1996 WL 617492 (E.D. Pa. Oct. 24, 1996) (Plaintiffs misjoined, in part, because they did "not allege the exact nature of their injuries or damages, other than averring that plaintiffs experience one or more of numerous injuries and side effects."); *Farmers Ins. Exch. v. Adams*, 170 Cal. App. 3d 712, 723 (1985), *disapproved on other grounds, Garvey v. State Farm Fire & Cas. Co.,* 48 Cal. 3 395, 411 n.10 (1989) (finding it "improper to label the damage herein to innumerable types of structures, occurring at widely separated locations within the state, resulting from a myriad of causes, and under various conditions as the 'same transaction or occurrence' within the meaning of Code of Civil Procedure section 379.").

- *Different medical histories of Plaintiffs*: In addition to the varying alleged injuries purportedly related to Plaintiffs' use of the polypropylene mesh at issue in this litigation, each one of the Plaintiffs has a unique medical history, which includes the highly individualized conditions and symptoms their surgeries were intended to treat. *See Boschert v. Pfizer*, No. 4:08-cv-1714, 2009 WL 1342142, 2009 U.S. Dist. LEXIS 41261, *3-5 (E.D. Mo. May 14, 2009) (holding plaintiffs misjoined where the only commonality was the drug ingested and citing cases holding misjoinder where plaintiffs "had different exposures to the drug, different injuries, and where plaintiffs had many differences "including their unique medical histories"").

- *Different physicians and surgical procedures.* Additionally, the mesh products for each of the Plaintiffs were likely implanted by different physicians, for different medical reasons, at different times, and at different medical facilities across the country. Further, the physicians likely practiced different implantation techniques, and conveyed different warnings to their patients. These are important differences in Plaintiffs' individualized claims that make joinder particularly inappropriate here. *See, e.g., Hyatt v. Organon, USA, Inc.*, No 4:12CV1248, 2012 U.S. Dist. LEXIS 146905, 53 (E.D. Mo. Oct. 10, 2012) (plaintiffs misjoined where "[e]ach Plaintiff was injured at different times in different states allegedly from their use of NuvaRing that was presumably prescribed by different healthcare providers"); *Alday v. Organon USA, Inc.*, No. 4:09-cv-1415, 2009 WL 3531802, 2009 U.S. Dist. LEXIS 100031 (E.D. Mo. Oct. 27, 2009) (same); *In re Rezulin Prods. Liab. Litig.,* 168 F. Supp. 2d at 145-46 (prescription drug plaintiffs' claims fraudulently misjoined where

they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" and where they alleged "different injuries"); *Chaney v. Gate Pharm. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, No. Civ. A. 98-20478, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) ("[t]he claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement").

- *Different dates of implantation*. Though Plaintiffs have not specifically alleged dates of implantation, it is likely that their surgeries have occurred over the course of years. The warnings, labels and marketing materials for these products may have changed over time, as well as the relevant literature available at the time of the implant. *See, e.g., Alday,* 2009 WL 3531802, 2009 U.S. Dist. LEXIS 10031 at *20 (plaintiffs misjoined where "[e]ach Plaintiff was injured at different times in different states allegedly from their use of NuvaRing that was presumably prescribed by different healthcare providers"); *In re Rezulin Prods Liab. Litig.,* 168 F.Supp.2d at 145-46 (prescription drug plaintiffs' claims fraudulently misjoined where they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" and where they alleged "different injuries").

34. In sum, there is no connection among the Plaintiffs' claims beyond the fact that they allege they were implanted at some point with one or more mesh products. This general commonality is simply insufficient to satisfy the "same transaction or occurrence" requirement under either Federal or California law. *See, e.g., Welch*, 2012 U.S. Dist. LEXIS at 48114 (finding fraudulent misjoinder under Missouri law because it was "impossible to determine how the Plaintiffs share any connection"); *Greene*, 344 F.Supp. 2d at 683-84 (plaintiffs fraudulently misjoined because "the ingestion of medication among various Plaintiffs alone cannot constitute the 'same transaction or occurrence.'"); *Moe v. Anderson*, 207 Cal. App. 4th 826, 847 (2012) (affirming demurrer without leave to amend where plaintiffs' sexual harassment claims against defendant doctor could not properly be joined because assaults took place on different dates and therefore did not arise out of same transaction or series of transactions, even if negligence claims against doctor's employer were properly joined); *Farmers Ins. Exch.*, 170 Cal. App. 3d at 723 (holding that damage homeowners experienced from

heavy storm in Northern California did not arise out of same transaction or occurrence because storm caused damage to "innumerable types of structures … at widely separated locations from within the state," making joinder of defendant insureds' claims inappropriate) (disapproved on other grounds by *Garvey v. State Farm Fire & Cas. Co.,* 48 Cal. 3d 395, 411 fn.10 (1989)).

35. The three New Jersey and New Hampshire Plaintiffs – who have no connection to the California Plaintiff – could have filed suit in their home states. Instead, they have purportedly elected to file their claims against companies <u>from their home states</u> all the way across the country in California, for no apparent reason. There is no connection between their claims and California. Most, if not all, of the evidence related to their claims is located elsewhere, and witnesses pertinent to their claims reside elsewhere.[6]

36. No plaintiff interested in obtaining redress for their grievances – the only legitimate purpose for filing a lawsuit – would have taken this course. Only one conclusion is possible: these non-California Plaintiffs have joined in this action for the sole purpose of defeating federal diversity jurisdiction. This is clearly improper. *See, e.g., Greene*, 344 F.Supp.2d at 685 ("the Court is inclined to sever claims where the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interests of justice is best served by severance").

37. Under these circumstances, this Court clearly has the authority to sever the New Jersey and New Hampshire Plaintiffs under Fed. R. Civ. P. 20 on the grounds that they have been improperly joined and their citizenship shall therefore not be considered for purposes of determining whether diversity jurisdiction exists.

---

[6] Clearly, joinder of these various claims will not promote the efficient resolution thereof -- quite the opposite in fact. For each Plaintiff's claim, the court will need to apply the "government interest" approach to determine which state's laws will apply. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87-88 (2010). Accordingly, the product liability laws of potentially seven or more different states will apply to this case, and seven sets of jury instructions will be required. *See Boschert v. Pfizer, Inc.,* Civ. No. 08-1714, 2009 U.S. Dist. LEXIS 41261, 2009 WL 1383183 (E.D.Mo May 14, 2009) (granting severance in part because "four sets of jury instructions would be required to encompass the laws from four different states"). As the court observed in *Chaney*, 1999 WL 554584, at *3-4, "[t]he joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process."

38. Accordingly, this Court should disregard the citizenship of the Plaintiffs from New Jersey and New Hampshire under fraudulent misjoinder jurisprudence. The Court should sever the non-diverse Plaintiffs' cases and remand them to state court while exercising jurisdiction over the Plaintiffs who are diverse from Defendants.

**B.     Atrium Has Satisfied The Procedural Requirements For Removal**

39. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon and by Atrium are attached as Exhibit A**.**

40. Alameda County is located within the Northern District of California, *see* 28 U.S.C. § 84 (c)(2), and venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because the Northern District of California, Oakland Division is the "district and division embracing the place where such action is pending."

41. Defendant Atrium was served with a copy of the Complaint on July 1, 2014. Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

42. All of the properly served Defendants consent to and join in this Notice of Removal. *See* 28 U.S.C. §§ 1441, 1446.38.

43. This Notice of Removal to Federal Court is signed pursuant to Fed. R. Civ. P. 11. *See* 28 U.S.C. § 1446(a).

44. Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d).

45. Atrium will promptly file a copy of this Notice with the Clerk of the Court in the Superior Court of the State of California, Count of Alameda, as required by 28 U.S.C. § 1446(d).

46. By removing this action to this Court, Defendants do not waive any defenses, objections, or motions available under state or federal law. Defendants expressly reserve the right to move for dismissal of some or all of the Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

WHEREFORE, Atrium gives notice that the matter bearing civil action number RG14730177 in the Superior Court of the State of California, County of Alameda, is removed to this Court pursuant

to 28 U.S.C. §§ 1441, *et seq*.  Atrium requests that this Court retain jurisdiction for all further proceedings in this matter.

Dated:  July 21, 2014.                    Respectfully submitted,

**AKERMAN LLP**

By: _____*/s/ Karen P. Ciccone*_____
         Karen Palladino Ciccone
Attorneys for Defendants
ATRIUM MEDICAL CORPORATION,
MAQUET CARDIOVASCULAR, LLC,
MAQUET CARDIOVASCULAR US SALES LLC, and MAQUET MEDICAL SYSTEMS USA

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 725 S. Figueroa St., 38th Floor, Los Angeles, California 90017.

On **July 21, 2014**, I served the following documents by placing a true copy thereof in a sealed envelope(s)

**NOTICE OF REMOVAL UNDER 28 U.S.C. §1441(B) (DIVERSITY) BY DEFENDANT ATRIUM MEDICAL CORPORATION**

on the person below as follows:

Dan C. Bolton
KELLER, FISHBACK & JACKSON LLP
28720 Canwood Street, Suite 200
Agoura Hills, CA 91301
Telephone: 818.342.7442
Facsimile: 818.341.7616

*Attorney for plaintiff s ROBYN BLASCO, CATHY CARSON, SUSAN HAHN, PAMELA MUSHTAQ, ROBERT SPRANKLE, JOSEPH BRAGG, JANICE KOWALESKI, and JUAN PAREDES*

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Fort Lauderdale, Florida.

☒ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐ (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

☐ (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal)   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **July 21, 2014**, at Los Angeles, California.

| Karen Palladino Ciccone | */s/ Karen P. Ciccone* |
|---|---|
| (Type or print name) | (Signature) |