EXHIBIT A

SUM-100

## AMENDED   SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Atrium Medical Corporation et al.
(See Additional Parties Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Robyn Blasco et al.
(See Additional Parties Attachment)

| *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |
|---|
| ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>JUN 2 4 2014<br><br>CLERK OF THE SUPERIOR COURT<br>By Rosa-Angela Snock<br>                        Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es)* Superior Court of the State of California<br>County of Alameda--Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | CASE NUMBER<br>*(Número del Caso)*<br>RG 11730177 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*:
Dan C. Bolton, Keller, Fishback & Jackson, LLP, 28720 Canwood Street, Suite 200, Agoura Hills, CA 91301, 818 342-7442

| DATE:<br>*(Fecha)* JUN 2 4 2014 | Leah T. Wilson<br>Clerk, by<br>*(Secretaria)* | Rosa-Angela Snock | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 3

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

Amended   **SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Robyn Blasco et al. v. Atrium Medical Corporation et al. | RG 14730177 |

INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*.

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

Robyn Blasco
Cathy Carson
Susan Hahn
Pamela Mushtaq
Robert Sprankle
Joseph Bragg
Janice Kowaleski
Juan Paredes

Page 2 of 3

Page 1 of 1

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Robyn Blasco et al. v. Atrium Medical Corporation et al. | RG 14730177 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff  [✓] Defendant  [ ] Cross-Complainant  [ ] Cross-Defendant

Atrium Medical Corporation
Getinge Group
Getinge USA, Inc.
Maquet Cardiovascular, LLC
Maquet Cardiovascular US Sales, LLC
Maquet Medical Systems USA
Does 1-20

Page 3 of 3

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Dan C. Bolton (State Bar No. 104236)<br>KELLER, FISHBACK & JACKSON LLP<br>28720 Canwood Street, Suite 200<br>Agoura Hills, CA 91301 | **ENDORSED**<br>**FILED**<br>ALAMEDA COUNTY<br><br>JUN 2 3 2014<br><br>CLERK OF THE SUPERIOR COURT<br>By CHERYL CLARK<br>Deputy |

TELEPHONE NO: 818.342.7442   FAX NO: 818.342.7616
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Robyn Blasco et al. v. Atrium Medical Corporation et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: 14730177 |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property**<br>**Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [✓] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify): 7
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 20, 2014
Dan C. Bolton
_____
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)- Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability (*not asbestos or
toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice-
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) (*not civil
harassment*) (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
(*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer
or wrongful eviction*)
Contract/Warranty Breach–Seller
Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage (*not provisionally
complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent
domain, landlord/tenant, or
foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
(*arising from provisionally complex
case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment (*non-
domestic relations*)
Sister State Judgment
Administrative Agency Award
(*not unpaid taxes*)
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-
harassment*)
Mechanics Lien
Other Commercial Complaint
Case (*non-tort/non-complex*)
Other Civil Complaint
(*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition (*not specified
above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| Robyn Blasco et al. v. Atrium Medical Corporation et al. | |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| | | |
|---|---|---|
| [ ] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) | |
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) | |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) |
|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 Auto tort (G)<br>Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI/PD / WD Tort | Asbestos (04) | [ ] 75 Asbestos (D) |
| | Product liability (24) | [X] 89 Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] 97 Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] 33 Other PI/PD/WD tort (G) |
| Non - PI/PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ] 79 Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] 80 Civil rights (G) |
| | Defamation (13) | [ ] 84 Defamation (G) |
| | Fraud (16) | [ ] 24 Fraud (G) |
| | Intellectual property (19) | [ ] 87 Intellectual property (G) |
| | Professional negligence (25) | [ ] 59 Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] 03 Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] 38 Wrongful termination (G) |
| | Other employment (15) | [ ] 85 Other employment (G) |
| | | [ ] 53 Labor comm award confirmation |
| | | [ ] 54 Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] 04 Breach contract / Wrnty (G) |
| | Collections (09) | [ ] 81 Collections (G) |
| | Insurance coverage (18) | [ ] 86 Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] 98 Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] 18 Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] 17 Wrongful eviction (G) |
| | Other real property (26) | [ ] 36 Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] 94 Unlawful Detainer - commercial  **Is the deft. in possession** |
| | Residential (32) | [ ] 47 Unlawful Detainer - residential  **of the property?** |
| | Drugs (38) | [ ] 21 Unlawful detainer - drugs  [ ] Yes [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] 41 Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] 62 Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] 49 Writ of mandate<br>Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No |
| | Other judicial review (39) | [ ] 64 Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] 77 Antitrust / Trade regulation |
| | Construction defect (10) | [ ] 82 Construction defect |
| | Claims involving mass tort (40) | [ ] 78 Claims involving mass tort |
| | Securities litigation (28) | [ ] 91 Securities litigation |
| | Toxic tort / Environmental (30) | [ ] 93 Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] 95 Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 Enforcement of judgment |
| | | [ ] 08 Confession of judgment |
| Misc Complaint | RICO (27) | [ ] 90 RICO (G) |
| | Partnership / Corp. governance (21) | [ ] 88 Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] 68 All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 Change of name |
| | | [ ] 69 Other petition |

202-19 (5/1/00)

A-13

ENDORSED
FILED
ALAMEDA COUNTY

JUN 2 3 2014

CLERK OF THE SUPERIOR COURT
By  CHERYL CLARK
Deputy

1   KELLER, FISHBACK & JACKSON LLP
    Daniel L. Keller (State Bar No. 191738)
2   Dan C. Bolton (State Bar No. 104236)
    Farid Zakaria (State Bar No. 280283)
3   28720 Canwood Street, Suite 200
    Agoura Hills, CA 91301
4   Telephone:  818.342.7442
    Facsimile:  818.342.7616
5

6   Attorneys for Plaintiffs

7
              SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
                        COUNTY OF ALAMEDA
9

10  ROBYN BLASCO, CATHY CARSON,          Case No.   RG 14730177
11  SUSAN HAHN, PAMELA MUSHTAQ,
    ROBERT SPRANKLE, JOSEPH BRAGG,       COMPLAINT FOR DAMAGES
12  JANICE KOWALESKI, JUAN PAREDES,
                                         1.  Strict Liability – Failure to Warn
13                                       2.  Strict Liability – Manufacturing Defect
           Plaintiffs,                   3.  Negligence
14                                       4.  Breach of Implied Warranty
        vs.                              5.  Breach of Express Warranty
15                                       6.  Fraud
    ATRIUM MEDICAL CORPORATION,          7.  Negligent Misrepresentation
16  GETINGE GROUP, GETINGE USA, INC.,
    MAQUET CARDIOVASCULAR, LLC,
17  MAQUET CARDIOVASCULAR US SALES,
    LLC, MAQUET MEDICAL SYSTEMS USA,
18  and DOES 1-20,
19
           Defendants.
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES

1      Plaintiffs, by and through the undersigned counsel, Keller, Fishback & Jackson LLP,

2 allege as follows:

3                        **INTRODUCTION**

4     1. This case involves a synthetic monofilament polypropylene mesh medical device

5 implanted in each plaintiff. The polypropylene mesh device was manufactured, promoted,

6 marketed, distributed and sold by Defendants for use in hernia repair.

7     2. Defendants misrepresented that polypropylene mesh is a safe and effective medical device

8 for hernia repair. In fact, polypropylene mesh causes a litany of serious medical problems and

9 complications, including, but not limited to, mesh shrinkage, expansion, deformation, cracking,

10 foreign body reaction, chronic inflammation, migration, organ damage, nerve damage, chronic pain

11 and sexual dysfunction.

12     3. Polypropylene mesh was never approved as safe and effective by the FDA. Most medical

13 devices, including mesh devices used for hernia repair, are "cleared" for marketing by the FDA

14 under the 510(k) process of the Federal Food, Drug and Cosmetic Act. This process requires only

15 that the manufacturer claim that the new device is "substantially equivalent" to another legally

16 marketed predicate device – a device that itself was never reviewed for safety and efficacy. Under

17 the United States Supreme Court decision in *Medtronic Inc. v. Lohr* 518 U.S. 470 (1996), the

18 preemption doctrine does not apply to devices cleared for marketing under the 510(k) process.

19     4. Plaintiffs bring this action to recover damages for injuries resulting from the strict liability,

20 failure to warn, negligence, negligent misrepresentation, fraud, and breach of implied and express

21 warranties by Defendants in the manufacture, promotion, marketing, distribution and sale of

22 polypropylene mesh.

23                        **PARTIES**

24     5. Plaintiff Robyn Blasco is a resident of Livermore, California, and was implanted with C-

25 QUR polypropylene mesh.

26     6. Plaintiff Cathy Carson is a resident of Clairton, Pennsylvania, and was implanted with

27 ProLite polypropylene mesh.

28

1    7.  Plaintiff Susan Hahn is a resident of Keaau, Hawaii, and was implanted with ProLoop

2    polypropylene mesh.

3    8.  Plaintiff Pamela Mushtaq is a resident of Alpharetta, Georgia, and was implanted with

4    ProLite polypropylene mesh.

5    9.  Plaintiff Robert Sprankle is a resident of Portsmouth, New Hampshire, and was implanted

6    with ProLoop polypropylene mesh.

7    10.  Plaintiff Joseph Bragg is a resident of Ward, Arkansas, and was implanted with ProLite

8    polypropylene mesh.

9    11.  Plaintiff Janice Kowaleski is a resident of Kearny, New Jersey, and was implanted with

10    C-QUR polypropylene mesh.

11    12.  Plaintiff Juan Paredes is a resident of North Bergen, New Jersey, and was implanted with

12    ProLoop polypropylene mesh.

13    13.  Defendant Atrium Medical Corporation ("Atrium") is a Delaware corporation

14    headquartered at 5 Wentworth Drive, Hudson, New Hampshire.  Atrium is a pharmaceutical

15    company involved in the research, development, testing, manufacture, production, distribution,

16    marketing, promotion and/or sale of medical devices used for hernia repair, including

17    polypropylene mesh.

18    14.  Defendant Getinge Group ("Getinge") is a Swedish corporation doing business in the

19    United States.  Getinge is a pharmaceutical company involved in the research, development, testing,

20    manufacture, production, distribution, marketing, promotion and/or sale of medical devices used for

21    hernia repair, including polypropylene mesh.

22    15.  Defendant Getinge USA, Inc. ("Getinge USA") is a Delaware corporation headquartered

23    at 1777 East Henrietta Road, Rochester, New York.  Getinge USA is a pharmaceutical company

24    involved in the research, development, testing, manufacture, production, distribution, marketing,

25    promotion and/or sale of medical devices used for hernia repair, including polypropylene mesh.

26    16.  Defendant Maquet Cardiovascular LLC ("Maquet") is a German corporation doing

27    business in the United States.  Maquet is a pharmaceutical company involved in the research,

28    development, testing, manufacture, production, distribution, marketing, promotion and/or sale of

medical devices used for hernia repair, including polypropylene mesh. In October 2011, Atrium announced that it had signed an agreement to be acquired by Getinge and its subsidiary, Maquet.

17. Defendant Maquet Cardiovascular US Sales, LLC ("Maquet Cardiovascular") is a Delaware corporation headquartered at 45 Barbour Pond Drive, Wayne, New Jersey. Maquet Cardiovascular is a pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, promotion and/or sale of medical devices used for hernia repair, including polypropylene mesh.

18. Defendant Maquet Medical Systems USA ("Maquet USA") is a Delaware corporation headquartered at 45 Barbour Pond Drive, Wayne, New Jersey. Maquet USA is a pharmaceutical company involved in the research, development, testing, manufacture, production, distribution, marketing, promotion and/or sale of medical devices used for hernia repair, including polypropylene mesh.

19. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 20, are unknown to plaintiffs who therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint when the true names and capacities of these fictitiously named defendants are ascertained. Plaintiffs are informed and believe, and thereon allege, that each fictitiously named defendant, whether as a supplier, manufacturer, distributor, marketer or seller, is responsible, strictly, negligently, in warranty, fraudulently or otherwise, for the occurrences alleged in this Complaint, and caused the injuries and damages sustained by Plaintiffs as herein alleged.

20. At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of the codefendants, and each of them, and was acting in the course and scope of that agency, service, employment and/or joint venture.

## FACTUAL BACKGROUND

21. Hernia, a condition affecting thousands of men and women in the United States each year, is the protrusion or projection of an organ or tissue through the wall that normally contains it. Although a hernia may form in any part of the abdominal wall, the most common site is the groin. Groin hernias are known as inguinal or femoral, depending on the location of the hernia. Another

COMPLAINT FOR DAMAGES                                                              PAGE 3

1  type of hernia is the ventral hernia (also sometimes called abdominal hernia).  There are two types

2  of ventral hernias.  One is known as an umbilical hernia and occurs in the umbilical ring that

3  surrounds the navel.  The other is referred to as an incisional hernia which occurs around surgical

4  incisions.

5      22.  Until 1958, abdominal wall hernias were repaired without mesh.  In 1958, Dr. Frances

6  Usher published a medical journal article entitled *Marlex mesh, a new plastic mesh for replacing*

7  *tissue defects.*  Dr. Usher used polypropylene mesh in experimental canine work for abdominal

8  repair.  Polypropylene is a petroleum-based plastic initially used in the Hula-Hoop and for kitchen

9  storage applications.

10     23.  Heavily promoted by the medical device manufacturers, including Defendants, hernia

11  mesh, typically made wholly or partly of polypropylene, is frequently used in hernia repair surgery.

12  About one million hernia repair surgeries with mesh are performed world-wide each year.  Despite

13  the marketing push by mesh manufacturers, including Defendants, to persuade doctors to use mesh

14  in hernia repair, many doctors steer away from polypropylene mesh and use the Shouldice

15  technique for hernia repair.  The Shouldice technique, used for decades, is a mesh-free hernia repair

16  method.

17     24.  It has been known since 1953 that any implanted device must not be physically modified

18  by tissue fluids, be chemically inert, not incite an inflammatory or foreign body cell reaction, be

19  non-carcinogenic, not produce allergic reactions, and be able to withstand mechanical stress.  D.

20  Ostergard, *Degradation, Infection and Heat Effects on Polypropylene Mesh for Pelvic*

21  *Implantation: What Was Known and When it Was Known*, 22 INT'L UROGYNECOLOGY J. 771-774

22  (2011).

23     25.  Polypropylene is not biologically inert in the human body, and can cause serious

24  injury to patients, significantly impacting their quality of life.  As one author stated, "[p]rosthetic

25  meshes are … not the inert materials they are claimed to be and can expand as well as shrink."  A.

26  Coda, *Structural Alterations of Prosthetic Meshes in Humans*, 7 HERNIA 29-34 (2003).

27     26.  A typical response to mesh implanted in the human body is inflammation, granuloma

28  formation and a foreign body reaction.  Scar tissue forms around the implant and causes contraction

of the mesh up to 50%. This inflammation, foreign body response and scar tissue formation is a permanent condition and can result in long-term complications. U. Klinge et al., *Foreign Body Reaction to Meshes Used for the Repair of Abdominal Wall Hernias*, 165 EUR. J. SURGERY 665-73 (1999).

27. Despite the promotion of mesh as safe and effective by Defendants, the published medical literature contradicts this unsupported belief. One author observed that "[t]he literature suggests otherwise with reports of various degrees of degradation, including depolymerization, cross-linking, oxidative degradation by free radicals, additive leaching, hydrolysis, stress cracking and mesh shrinkage along with infection, chronic inflammation and the stimulation of sclerosis." The author concluded, "Based on available evidence the polypropylene used for surgical treatment of various structural defects is not inert after implantation in the human body." G. Sternschuss et al., *Post-implantation Alterations of Polypropylene in the Human*, 188 J. UROL. 27-32 (2012). As the mesh degrades in the human body, small flakes of polypropylene can lead to infection and irritation, and resultant serious pain, as the body tries to rid itself of the foreign material.

28. Once implanted, mesh contracts as well as cracks substantially in the human body. In one study, a contracture rate of 30% to 50% was found four weeks after implantation. Another study reported an 85% contracture rate after eight years. Nerve fibers are entrapped in the contracted tissue causing severe pain.

29. A debilitating consequence of hernia repair with mesh is inguinodynia, or chronic groin pain. This condition results from nerves, such as the ilioinguinal, iliohypogastric and genitofemoral nerves, coming into contact with mesh, after its degradation and deformation in the body following implantation, and from the persistent and permanent foreign body reaction to the implantation of mesh. It has been reported that hernia repair with mesh results in an extraordinarily high rate of inguinodynia – in some reports approaching 50%. *See, e.g.*, J.E. Fischer, *Hernia Repair: Why Do We Continue to Perform Mesh Repair in the Face of Human Toll of Inguinodynia?* 206 AMER. J. SURG. 619-23 (2013).

30. Other studies have found an even higher rate of chronic pain after hernia repair with mesh. One study found that approximately 75% of patients had pain one year after hernia repair at

1   rest, and 78% had pain when moving. B. Page , *Pain From Primary Inguinal Hernia and the Effect*
2   *of Repair on Pain*, 89 Brit. J. Surg. 1315-18 (2002).
3       31.  Despite the abundance of scientific and medical information published in the literature
4   relating to the dangerous properties and serious risks of polypropylene mesh, Defendants made a
5   deliberate decision to ignore these dangers and to aggressively promote polypropylene mesh to
6   healthcare providers and consumers. Defendants misrepresented and concealed from Plaintiffs,
7   their physicians and consumers, the serious risks, dangers and defects enumerated in this
8   Complaint.

9                           <u>PLAINTIFF FACTUAL ALLEGATIONS</u>

10      32.  The hernia mesh implanted in each Plaintiff was polypropylene mesh manufactured,
11  promoted, marketed, distributed and sold by Defendants.
12      33.  The polypropylene mesh caused Plaintiffs to suffer permanent injuries, substantial pain
13  and suffering, emotional distress, medical expenses, lost wages and earning capacity, and
14  diminished quality of life.
15      34.  Before Plaintiffs underwent hernia repair surgery with polypropylene mesh, they had no
16  history of these physical and emotional injuries.
17      35.  Pursuant to Code of Civil Procedure section 378, each Plaintiff suffered injuries arising
18  out of the same transaction, occurrence and/or series of transactions or occurrences in the design,
19  manufacture, distribution, promotion, marketing, sale and warnings of the polypropylene mesh, and
20  questions of law and fact common to all Plaintiffs arise in this action.
21      36.  Plaintiffs filed this lawsuit within the applicable limitations period of first suspecting
22  polypropylene mesh caused the harm and injuries suffered by Plaintiffs. Plaintiffs could not, by the
23  exercise of reasonable diligence, have discovered the wrongful cause of their injuries at an earlier
24  time because the injuries were caused without perceptible trauma or harm, and when the injuries
25  were discovered, their cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs
26  have reason to suspect, that Plaintiffs had been injured, the cause of the injuries, or the wrongful
27  nature of the conduct causing the injuries, until less than the applicable limitations period before the
28  filing of this Complaint. Moreover, Plaintiffs were prevented from discovering this information

1  sooner because Defendants misrepresented and concealed, and continue to misrepresent and
2  conceal to the public and the medical profession, the dangers of polypropylene mesh, as well as the
3  true facts that could have led Plaintiffs to discover a cause of action against Defendants for their
4  wrongful conduct.

### FIRST CAUSE OF ACTION
### STRICT LIABILITY – FAILURE TO WARN

7  37. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as
8  if fully set forth herein.

9  38. Defendants designed, manufactured, distributed, promoted, marketed and sold the
10  polypropylene mesh and it was expected to reach, and did reach, physicians and consumers,
11  including Plaintiffs, without substantial change in the condition in which it was sold.

12  39. The polypropylene mesh manufactured, distributed, promoted, marketed and sold by
13  Defendants was defective and dangerous at the time it was placed in the stream of commerce
14  because of the lack of appropriate and necessary warnings of known or knowable dangers.

15  40. The absence and inadequate warnings include, but are not limited to, the following:

   a. the danger of mesh to contract, shrink, expand, swell and/or deform after
      implantation;
   b. the danger of mesh to degrade, fragment and creep after implantation;
   c. the danger of mesh erosion, extrusion and/or migration;
   d. the inability to withstand mechanical stress after implantation;
   e. the lack of biological inertness of polypropylene mesh;
   f. the danger of chronic inflammation, granuloma formation and foreign body cell
      reaction;
   g. the danger of chronic infections;
   h. the danger of permanent scar tissue formation and sclerosis;
   i. the danger of the recurrence of hernia;
   j. the danger of inguinodynia, or chronic groin pain;
   k. the danger of mesh coming into contact with nerves and nerve damage;

l.   the danger of organ damage;

m.   the danger of spermatic cord damage and testicular pain;

n.   the danger of pain during sexual intercourse and sexual dysfunction;

o.   the danger of autoimmune disease;

p.   the potential for revision surgery following implantation;

q.   hernia repair with mesh is no more effective than other alternative hernia repair methods;

r.   the difficulties of removing mesh from the body following implantation;

s.   the danger of leaving residual mesh in the body after implantation;

t.   the substantial impairment of the quality of life following mesh implantation.

41.   The polypropylene mesh manufactured, sold, distributed and promoted by Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of polypropylene mesh, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury.

42.   Plaintiffs and their physicians used the polypropylene mesh as directed for its intended purpose in hernia repair.  Defendants knew that the device would be used by consumers, such as Plaintiffs, without inspection for defects, and Plaintiffs and their physicians did not know, and had no reason to know, of the existence of the above defects.

43.   The polypropylene mesh was not altered or modified in any way before it was implanted in Plaintiffs.

44.   As a direct and proximate result of the above defects and substantial dangers in the polypropylene mesh, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses in the future.

///

///

///

///

## SECOND CAUSE OF ACTION

## STRICT LIABILITY – MANUFACTURING DEFECT

45. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as if fully set forth herein.

46. Defendants designed, manufactured, distributed, promoted, marketed and sold the polypropylene mesh, and it was expected to reach, and did reach, physicians and consumers, including Plaintiffs, without substantial change in the condition in which it was sold.

47. The polypropylene mesh manufactured, distributed, promoted, marketed and sold by Defendants was defective and dangerous at the time it was placed in the stream of commerce with respect to manufacture because it deviated materially from Defendants' design and manufacturing specifications in such a manner as to make it unreasonably dangerous for its intended use.

48. Plaintiffs and their physicians used the polypropylene mesh as directed for its intended purpose in hernia repair. Defendants knew the device would be used by consumers, such as Plaintiffs, without inspection for defects, and Plaintiffs and their physicians did not know, and had no reason to know, of the existence of the above defects.

49. The polypropylene mesh was not altered or modified in any way before it was implanted in Plaintiffs.

50. As a proximate result of the above defects and substantial dangers in the polypropylene mesh, Plaintiffs suffered serious injury, harm, damages, economic and non-economic loss, and will continue to suffer such harm, damages and losses in the future.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

51. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as if fully set forth herein.

52. At all times herein mentioned, Defendants had a duty to exercise reasonable care to manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell and adequately warn of the risks and dangers of polypropylene mesh.

1    53. At all times herein mentioned, Defendants negligently, carelessly, recklessly and/or
2    maliciously manufactured, designed, formulated, distributed, compounded, produced, processed,
3    assembled, inspected, tested, distributed, marketed, labeled, packaged, prepared for use and sold
4    polypropylene mesh, and negligently, carelessly, recklessly and/or maliciously failed to adequately
5    warn of the risks and dangers of polypropylene mesh, and to adequately provide post-marketing
6    warnings of such risks and dangers.  Defendants breached their duty by:

7         a.    Failing to design the polypropylene mesh so as to avoid an unreasonable risk of
8               harm to persons in whom the device was implanted, including Plaintiffs;

9         b.    Failing to manufacture the polypropylene mesh to as to avoid an unreasonable risk
10              of harm to persons in whom the device was implanted, including Plaintiffs;

11        c.    Failing to use reasonable care in the testing of the polypropylene mesh so as to avoid
12              an unreasonable risk of harm to persons in whom the device was implanted,
13              including Plaintiffs;

14        d.    Failing to use reasonable care in inspecting the polypropylene mesh so as to avoid an
15              unreasonable risk of harm to persons in whom the device was implanted, including
16              Plaintiffs;

17        e.    Otherwise negligently designing, manufacturing, distributing, promoting, marketing
18              and selling polypropylene mesh.

19   54. Defendants also negligently failed to warn or instruct Plaintiffs, and their physicians, as
20   set forth above in this Complaint.

21   55. Despite the fact that Defendants knew or should have known that polypropylene
22   mesh caused unreasonable and dangerous risks and complications, and failed to warn of those risks
23   and complications, Defendants continued to market polypropylene mesh to consumers including
24   Plaintiffs.

25   56. Defendants knew or should have known that consumers such as Plaintiffs would
26   foreseeably suffer injury as a result of the failure of Defendants to exercise ordinary care as
27   described above.

28

57. The negligence of Defendants was a proximate cause of Plaintiffs' injuries, harm, economic and non-economic loss which Plaintiffs suffered, and will continue to suffer, as described herein.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

58. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as if fully set forth herein.

59. Before polypropylene mesh was implanted in Plaintiffs, Defendants impliedly warranted to Plaintiffs, and their physicians, that  polypropylene mesh was of merchantable quality, adequately contained, packaged and labeled, and safe and fit for the use in hernia repair.

60. Plaintiffs were and are inexperienced in the research, design, manufacture, sale and distribution of medical devices such as polypropylene mesh, and reasonably relied upon the skill, judgment and implied warranty of the Defendants in undergoing hernia repair surgery with polypropylene mesh.

61.  Polypropylene mesh was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, since it causes serious medical problems and complications when used as intended and will cause injury to consumers who undergo hernia repair with polypropylene mesh.

62. As a result of the breach of implied warranties by Defendants, Plaintiffs suffered injuries and damages as herein alleged.

### FIFTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

63. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as if fully set forth herein.

64. At all times herein mentioned, Defendants expressly represented and warranted to Plaintiffs and Plaintiffs' physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, healthcare providers, medical patients and the general public, that polypropylene mesh is safe, effective, fit and proper for its intended use in hernia repair.

65. In implanting polypropylene mesh for hernia repair, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of Defendants. These warranties and representations were false in that polypropylene mesh is unsafe, unfit and ineffective for its intended purpose in hernia repair as described in this Complaint.

66. As a result of the breach of express warranties by Defendants, Plaintiffs suffered injuries and damages as alleged herein.

**SIXTH CAUSE OF ACTION**

**FRAUD**

67. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as if fully set forth herein.

68. Defendants, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed polypropylene mesh, and up to the present, wilfully deceived Plaintiffs by concealing from them, Plaintiffs' physicians and the general public, the true facts concerning polypropylene mesh, which the Defendants had a duty to disclose.

69. At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of polypropylene mesh and wilfully deceive Plaintiffs, Plaintiffs' physicians and the general public as to the benefits, health risks and consequences of using polypropylene mesh for hernia repair. Defendants knew of the foregoing, that polypropylene mesh is not safe, fit or effective for human implantation, that undergoing implantation with polypropylene mesh is hazardous to health, and that polypropylene mesh has a serious propensity to cause injuries and harm to consumers, including but not limited to the injuries Plaintiffs suffered.

70. Defendants suppressed and concealed the true facts concerning polypropylene mesh with the intent to defraud Plaintiffs, in that Defendants knew that Plaintiffs' physicians would not have used, and Plaintiffs would not have undergone implantation with, polypropylene mesh, if they were aware of the true facts concerning its dangers.

71. As a result of Defendants fraud and deceit, Plaintiffs suffered the injuries and damages as herein alleged.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

72. Plaintiffs incorporate by reference herein all of the above allegations in this Complaint as if fully set forth herein.

73. From the time polypropylene mesh was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiffs, Plaintiffs' physicians and the general public, including but not limited to the misrepresentation that polypropylene mesh was safe, fit and effective for use in hernia repair. At all times herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of polypropylene mesh and wilfully deceive Plaintiffs, Plaintiffs' physicians and the general public as to the health dangers and consequences of the use of polypropylene mesh in hernia repair.

74. The Defendants made the foregoing representations without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance, and the purchase and use of polypropylene mesh for hernia repair.

75. The representations by the Defendants were in fact false, in that polypropylene mesh is not safe, fit or effective for use in hernia repair, using polypropylene mesh is hazardous to health, and polypropylene mesh has a serious propensity to cause injuries to consumers, including but not limited to the injuries suffered by Plaintiffs.

76. The above representations by Defendants were made with the intention of inducing reliance, and the purchase and use of polypropylene mesh for hernia repair by Plaintiffs.

77. In reliance on the misrepresentations by the Defendants, Plaintiffs were induced to use polypropylene mesh for hernia repair. If Plaintiffs had known the true facts and the facts concealed by Defendants, Plaintiffs would not have used polypropylene mesh. The reliance of Plaintiffs upon Defendants' misrepresentations was justified because such misrepresentations were made and carried out by individuals and entities that were in a position to know the true facts.

78. As a result of the above negligent misrepresentations by Defendants, Plaintiffs suffered injuries and damages as alleged herein.

## PUNITIVE DAMAGES ALLEGATIONS

79. Plaintiffs incorporate by reference herein all of the allegations in this Complaint as if fully set forth herein.

80. The acts, conduct and concealment of Defendants, as alleged in this Complaint, were willful, malicious, oppressive and fraudulent. Defendants committed these acts with a conscious disregard for the rights and safety of Plaintiffs and other consumers, and for the primary purpose of increasing Defendants' profits from the distribution and sale of polypropylene mesh. Defendants' outrageous and unconscionable conduct warrants the imposition of punitive damages against Defendants in an amount appropriate to punish and deter such conduct in the future.

81. Before the manufacture, promotion, distribution and sale of polypropylene mesh to Plaintiffs, Defendants knew that it was in a defective condition, and knew that they had made a strategic decision to fraudulently represent and intentionally conceal the significant risks and serious dangers of polypropylene mesh, as described in this Complaint, and knew that consumers, including Plantiffs, who used polypropylene mesh for hernia repair would, and did, experience severe physical, mental and emotional injuries. Further, Defendants, through their officers, directors, managers and agents, knew that polypropylene mesh presented a substantial and unreasonable risk of harm to the public, including Plaintiffs. Thus, Defendants unreasonably, maliciously, oppressively and fraudulently subjected consumers of polypropylene mesh, including Plaintiffs, to the risk of serious injury.

82. Despite their knowledge, Defendants, acting through their officers, directors and managing agents for the purpose of enhancing the profits of Defendants, knowingly and deliberately failed to remedy the known defects in polypropylene mesh and failed to warn the public, including Plaintiffs, of the serious risk of injury caused by the defects in polypropylene mesh. Defendants and their officers, directors and managing agents, intentionally proceeded with the manufacture, sale, distribution and marketing of polypropylene mesh knowing these actions

1    would expose consumers, including Plaintiffs, to serious danger in order to advance Defendants'
2    financial interests and increase revenue.
3        83. Defendants' conduct was despicable and so contemptible that it would be looked down
4    upon and despised by ordinary decent people, and was carried on by Defendants with willful and
5    conscious disregard for the rights and safety of Plaintiffs and other consumers, thereby entitling
6    Plaintiffs to the imposition of punitive damages.
7
8        WHEREFORE, Plaintiffs pray for judgment against the Defendants, as follows:
9        1.  General damages, according to proof;
10       2.  Special damages, according to proof;
11       3.  Loss of earnings and earning capacity, according to proof;
12       4.  Medical expenses, past and future, according to proof;
13       5.  Mental and emotional distress, past and future, according to proof;
14       6.  Punitive damages, according to proof;
15       7.  Costs of suit herein;
16       8.  Pre-judgment and post-judgment interest, as provided by law; and
17       9.  Such other and further relief as the Court may deem just and proper.
18
19   Dated: June 20, 2014                    KELLER, FISHBACK & JACKSON LLP
20
21
22                                     By: _Dan Bolton_____
23                                           Dan C. Bolton (State Bar No. 104236)
                                             28720 Canwood Street, Suite 200
24                                           Agoura Hills, CA  91301
                                             Telephone:  818.342.7442
25                                           Attorneys for Plaintiffs
26
27
28